Oyez, oyez, oyez. The Honorable Appellate Court, 5th District, State of Illinois, is now in session. The Honorable Justice Cates presiding along with Justice Welch and Justice Moore. The first case this morning is 5-220-687, Stefanisin v. Prairie State Energy Campus Management, Inc. et al. Arguing for the appellant is Melissa Pesch. Arguing for the appellee is Michelle Rich. Each side will have 15 minutes for the argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, ladies. Good morning. Good morning, Your Honor. Your Honors. Are we both ready to proceed? I am. Thank you. Okay. Ms. Pesch, you get the lead off, so you may begin when you're ready. Thank you. May I please the court? I'm Melissa Pesch, and I'm here representing both defendants in this case, Prairie State Energy Management Company and Prairie State Generating Company. We're here today on an appeal from the Honorable Judge Rudolph out of the Circuit Court of St. Clair County, in which he denied defendants' motion to transfer venue. Defendants are seeking to transfer venue out of St. Clair County and into Washington County on two separate grounds. First, the venue is not proper in St. Clair County because no part of the transaction occurred there, and neither of the defendants are residents, as that term is defined, and venue should also be transferred on the basis of forum nonconvenience. I'd like to just take a moment and go over a few of the pertinent facts in this case because this case is so fact-specific related to the venue. This appeal involves Prairie State Energy Campus, and that's the name of an energy production facility located in Washington, Illinois. It's a campus. It's a facility, not an entity, and it's where electricity is produced in the township of Lively Grove, which is located in Washington County. It has a mailing address of Marissa, but that's only because the post office does not have a Lively Grove post office, so they're told to use a Marissa, Illinois address. There are two legal entities involved in this case, both of whom are defendants. The first is Prairie State Generating Company, and the generating company is the company that runs the day-to-day operations of the energy campus, and I'm going to refer to them as the operating company because there's a little confusing. The operating company is the entity that employed Mr. Stephanison in this case. He worked as a maintenance employee at the energy campus, and he worked out of the facility located in Washington County, Illinois. The second defendant is Prairie State Energy Campus Management, and the second named defendant is basically a holding company. It's owned by nine municipalities and co-ops, which are located in eight different states, some of which are actually competitors, but they all came together to create this energy campus that produces electricity solely for their use. The holding company and the operating company don't own any land. They don't own any personal property. The holding company has no employees, and the energy campus that is located in Washington County. Wait, you just said the operating company doesn't have any employees. Oh, I'm sorry, Judge. The holding company doesn't have any employees. Only the operating company has employees. And then the electricity produced at the energy campus is then divided up based on the pro rata share of ownership amongst the nine participants. They also share in the costs. So whatever the costs are, they're divided based on their pro rata share of ownership. The electricity is never sold to third parties or consumers. It is produced 100% for the benefit of the nine participants who own the holding company. And 100% of the energy produced by Prairie State is produced in Washington County. It's not produced any place else. We're here today because some of the nine participants own a water pump facility that is located in St. Clair County. Water is pumped from the Kaskaskia River through pipes to the Washington County energy campus where it is then used. It's been stored in a holding pond with other water that's collected, and then it is then used in the cooling process of producing the electricity. And just for clarification, the Kaskaskia River is about 325 miles long. It runs through central and southern Illinois, about a dozen counties. So the water is pumped from this pump facility to Washington County where it then is used in the cooling process. Now the water pump facility that we're talking about, it's a small building located on several acres of land right on the Kaskaskia River. And there's no phones. There's no bathrooms. There's no employees. There's no signage. There's nothing there other than this building that has the pumps inside it that then pumps the water to Washington County. And who owns the acreage that the pump house is located on? Ameren Electric. So is there a rental agreement between the operating company and Ameren? There is not. So the only agreement between Ameren is with some, not all, of the nine participants. Neither the operating company nor the holding company have any leases or have any legal ownership of the land. Additionally, they don't own the building or the equipment either. That is all jointly owned by the nine participants. So we've got land that's owned by Ameren leased by the participants. The operating company's only true purpose is just to facilitate and make sure that there are employees to run the company and that the electricity is divided amongst the participants based on its pro rata share and that the costs, they're also a cost center basically. So I know that in a plaintiff's brief, they brought up the fact that there are some tax records that are sent in care of Prairie State management, the operating company. And that's true. They're sent in care of it. It doesn't mean that they own the, that the operating company owns the land, but the tax bills are sent to them because part of the operating company's divvying up the costs amongst all the participant owners. So they collect the bills and then they divide the costs. Who owns the pump house and the pipes? The participants do. The operating company doesn't own that? They do not. But they do supply employees to maintain it. They do. Employees from the energy campus that are employed by the operating company. And I should qualify that maintenance employees only, which are a very small segment of the entire population of employees, but maintenance employees are dispatched on a near daily basis. I can't say every day, but, but I would say very close to every day to go out and make a quick check just to make sure the pumps are operating. So they'll go in the, if there is a maintenance issue, they'll take care of it. But for the most part, they go, they drive to the facility, they check on the pumps. If they're operating, they turn around and they go back to their position in Washington County. Mr. Stefanosin was one of those individuals. He, during his 10 years of employment, he traveled to the pump house in St. Clair County on eight occasions. And out of his thousands of hours of work for Prairie state, he spent about 34 hours traveling to and from. St. Clair County. And the same is true for most maintenance workers. They're on a rotation. Nobody is permanently assigned to work there. And what's also very important to note is nothing. Related to the pump house is related to the underlying action. So this is a worker's comp retaliation. May I ask you the underlying action is retaliatory discharge. Yes, it is. Workers comp case. Yes, it's a retaliatory discharge based on workers comp. The injury occurred at the Washington County facility. And the ultimate termination decision occurred at the Washington County facility. I don't think that there is any debate or dispute. That nothing happened with regard to the pump facility. That is being used as a basis to establish venue in St. Clair County. The only reason that it's even relevant to this appeal is because it is situated in St. Clair County where this action was filed. So at least before you get to form nonconvenience, venue itself doesn't focus on the plaintiff per se. Does it focus? Oh, not at all. Actually, it focuses more on the defendants. And so for venue, we would look at, there's no registered office in St. Clair County for either of them. Yeah. You know, that's interesting. You say that because the judge's order. Just on page SRC. One 10. Says that the plane plaintiff does not dispute the defendants registered offices are located at three, eight, seven, two County highway and Marissa. Yeah. This address is located in Washington County. I thought Marissa's in St. Clair County. So Marissa is located in both counties. And as I indicated in the opening part of my factual statement, there there's some confusion because the entire energy campus is located within the township of lively grove. It's technically not located in Marissa, but lively grove is such a small township. That they don't have their own postal facility. In fact, their own administrative offices where all of their, and the administration of lively grove is located. They have a Marissa, Illinois. Address because that's the nearest postal facility. So the that's the only connection is that they have a Marissa mailing address, but no part of the energy campus is located within the boundaries of St. Clair County. But don't we look to the registered office as part of the issue when we get to the form non-convenience? Yes. And the registered office, that address, even though it says Marissa is physically located in Washington County. So that address is physically located. If you were to find that on the map or look it up on the map, it's physically located in the boundaries of Washington County. So the registered offices in Washington County. So in order for there to be venue, we have to move on to the next step and decide either that the defendants are doing business there or if they have an other office there. First, I'll start out with the, the use of the doing business standard and both the trial court and the plaintiffs have conflated the ideas of jurisdiction and venue. Even the trial court's order talks about jurisdiction being appropriate. But the, the standards for contacts necessary for venue purposes are significantly more than the minimal contacts necessary for jurisdictional purposes. And here, the case of Boxdorfer versus Daimler Chrysler, which came out of the fifth district is, is very on point for this particular case. In that case, the fifth district evaluated it and decided that the defendants were not doing business within Madison County, even though they sold products to Madison County dealers. And, but the ownership interest in the cars transferred at the plant, not in Madison County. And that's exactly what we have here. All of the energy that's produced in Washington County is transferred to the participant owners in Washington County over individual lines. So if you can imagine it comes out of the energy production facility and splits off into these different wires and goes to the different owners. So a hundred percent of the ownership is transferred in Washington County, not in St. Clair County. And then the fact that one participant owner then resells or provides some of that electricity to some St. Clair County residents is akin to the, to the dealerships selling cars in the box store for case. Additionally, there are a number of Illinois Supreme court cases that have far more contacts with doing business than the case here. Gardner is a great example. In that case, the defendant had $2.6 million in product sales. They purchased $3 million in supply parts from residents in St. Clair County. And yet the Illinois Supreme court found that wasn't enough here. Prairie state doesn't sell anything in St. Clair County. They don't design market, sell anything. They have zero in, in sales to St. Clair County residents. And the only so-called product that comes from St. Clair County is the water pumped from the cask Casca river, but it's not a component of electricity. There's nothing unique about it. St. Clair County wasn't chosen because of St. Clair County. Instead, it was chosen just based on proximity to the water. So the water leaves St. Clair County as water arrives in Washington County as water. And it's simply used as a part of the process in cooling to make the electricity. The same with standby. The Illinois Supreme court said that visits, even though they were regular, but infrequent were not enough to the County to establish venue. The other office standard, I want to hit on really quickly. I'm about to run out of time, but the plaintiffs rely heavily on the Mellier case that I think is highly distinguishable. In this case, they, in that case, they leased a hanger. They had a, they had signs, the hanger designated. That hanger number six was where the lure brothers were located here. There's no signage. There's no marketing. There's no design. There's no business. There's nothing that happens out of that water pump facility in St. Clair County. And very quickly, we also believe that venue would be more appropriate and more convenient in, in Washington County. All of the employees are located there. I see my time is up. Let me ask you a question. You just were getting to it when you ran out of time. The plaintiff is from Clinton County. Correct. And so I look at this on a form, non-convenience basis is kind of a scattered witness case. And it seems that the supervisor who made the decision to terminate lives in St. Clair County. That's correct. You didn't address that. I mean, what's the effect of that on form non-convenience here? I don't think it has any effect. The fact that the, some of the witnesses reside in St. Clair County, the fact that 100% of the witnesses. Work in Washington County, the facilities in Washington County, if there's any viewing that's necessary, it's going to be in Washington County. The documents are in Washington County. And so it, in order to, for residency to even be important, you would have to presume that the individual would, would be say going straight from his home to the deposition or to court. And it equally as likely that the individuals would be pulled out of work in the middle of the day, in which case they'd have to go from their home to Washington County, from Washington County, back to St. Clair County and then from St. Clair County back to work. So from a convenience perspective, it would seem that keeping everything related to the lawsuit in Washington County that has the biggest interest in the case is far more convenient to the parties. Okay. Thank you very much for that. Ms. Pesh. Thank you very much. Ms. Rich, what do you have to say? Good morning, your honors. May it please the court, Ms. Pesh, Michelle Rich here for Keith Stefanis and in this case, obviously we're here today because we believe that the trial court's ruling should be upheld by the court. Right off the bat. Do any of you have any questions that you'd like me to address? Yeah. Okay. Great. So. I cited this case pretty heavily in my brief. As Ms. Pesh indicated, because, because I do think, and I, I believe it's pretty clear. That this is the most analogous case. To the case that we have currently before us. And that's Mellie air versus. The lower brothers, which is in fact a fifth district case. And why I think it's even more. Analogous to this particular case than the court's ruling in that case is what I'd like to talk to you a little bit about. Right now. So in that case, the company was engaged in construction work. They did embankment work, channel maintenance, river projects. Heavy construction projects and highway work on land. And then what they had in St. Claire County was an airplane hangar. In Cahokia. And they kept a plane there. And the, the evidence showed that that airport was used to transport company employees to job sites, bid jobs. Travel to industry meetings and conventions. And the evidence was that two pilots regularly reported to work at the hangar. The hangar was equipped with telephone and a desk. What's interesting though, is that. The court doesn't talk about, and it's not a factor. I think that's one thing that the defendants are trying to kind of conflate and make this issue about as, as you kind of alluded to earlier, justice Cates. Was that it's, it's not necessarily. How much work in totality that the defendants do in St. Claire County, as opposed to Washington County. Pretty clearly the majority of their business operations occur in Washington County, but what they have done in this case. Is that they have this other office. And what the court found in Mellie air was that they have this other office. That even if it's a small percentage of what they do, that's still constitutes an other office under the law as the court held in that case. And why the court held that in that case was because. They were. They were regularly using that facility. It didn't matter. In relation to the rest of their business activities, how often, but they were regularly going there and availing themselves of that facility. And this is specifically why the court ruled the way that it did and took the time to issue the holding that it did in that case. And the other office. And it's, it's significant because. What they said was they. Indicated. We believe the phrase other office includes any fixed location purposefully selected to carry on an activity in furtherance of the corporation's business activities. And that's exactly what the defendants have done with this pump house located in St. Claire County. Their own. Their own employees affidavit. Acknowledges that they operate this water pump facility in St. Claire County. And they did not refute my client's affidavit that he and other employees. And you, you heard Ms. Pesh, I think even acknowledge it just now this morning. That they go there on a daily basis. And that's what he indicated in his affidavit as well. I think Ms. Pesh said almost a daily basis. So this is the same situation that we have. That the court found in Mellie air is they have a fixed location that they are, they purposefully selected to carry on an activity in furtherance of the corporation's business activities. And it's even more clear in this case that it's being used for business purposes by defendants because the pump house is used to pump water from the Kaskaskia river to their energy campus facility. In Mellie air, theoretically, they could have had their airplane hanger anywhere because they were just using it to fly to and from places, but they specifically selected this location. The defendants have because of its proximity to the river. And they can't refute that that's an incentive, that's an incentive for them to use that location. And that's an essential component. Of its business of power production. Another case that the defendants had cited was the. To birth a case. Again, that that's distinguishable because that was a home office. That. The defendants did not purposefully select. And that's what the court held in that case is they didn't purposefully select that as their office. They hired that employee, but that wasn't something that they had purposefully availed themselves, which the defendants did in this case. So miss rich, if you had venue, then how do you get formed on convenience? And it's more form in St. Clair County in light of the form nonconvenience doctrine. Sure. So the trial court ruled that the defendants had not met their burden in, in showing that this was an inconvenient forum. And of course, as you know, this is an abuse of discretion. Standard of review when reviewing a trial court's determination with respect to form nonconvenience. And I think you kind of hit the nail on the head. Earlier justice Cates, when you were talking about the. The location of these witnesses. As I pointed out in my brief, there are numerous defendant employees. And I think it's important to point out that the defendants have not met their burden in showing that this would be somehow inconvenient for them to get to St. Clair County when they have all of these employees. Who reside in St. Clair County. It's, it's just not simply.  Clair County. It's just not simply inconvenient for them to appear in St. Clair County. When it comes to the, to this case. But there'd be any reason for a viewing in this case. To occur. Of the pump house. Of any facility. I think the, the, the affidavits that we have. From Mr. Stefan. Mr. Jonathan and then also. Mr. Let's see. Okay. Sander, excuse me. Mr. Sander are clear that this, this is a. A facility that is operated by the defendants. And the materials within. The pump house are in within the control of the defendants. The tax documents that I. Attached as exhibits that were included as affidavits also speak to that. Because it indicates that that facility is in care of. Prairie state. I was asking you about the viewing of the injury in this case. Of the injury, your honor. The. I thought that the, this is a retaliation claim. Is that right? Correct. Retaliation for exercising his rights under the workers compensation act. Right. So the original injury under the compact. Is that going to be relevant? His original comp claim. Is that going to be relevant under the form non-convenience? Oh, no, I, I don't believe so. Your honor. I don't believe that that would be. Because this past year indicated that viewing might be necessary. And that's what I'm asking is, is there really any issue here on viewing? No, I don't. I don't think so. I don't think that in a, in a retaliatory discharge case, there would be any need to view any premises of, of defendants facilities. Okay. Counselor. Counselor. Yes, your honor. And you mentioned every one of those cases you talked about, whereas they had an office in this country. They so-and-so had an officer. But then you, you change and just call it a pump house. Is that an office? And if so, what is there any cases that say, what is required to have an office? Your honor. I'm sorry. I missed the part of the second half of what you said. Okay. Is there, are there any cases? Did you cite anything that showed what is an office? When there was a lot of discussion that there was nothing in this pump house that was an office. Did they have a desk? Did they have a light over the desk? Did they have a telephone? I don't know if anything, what you have to do to have an office. Is there any cases that you cite? Cause you used the term office a bunch of times when you started. Sure. So I think that's what the Meliere case specifically speaks to your honor. And what they do is they, They specifically say that the definition of an office should be broad. Because obviously there's lots of different types of businesses that do different things. And one of the problems that the fifth district found, I think with the prior case law is that it. It was too narrow of an interpretation of what they were considering an office to be. Because obviously the defendants in this case, you know, they're, they're not. They're not like my business. They're not like a law firm. They are a production facility that generates power. So that's completely different in terms of what an office is going to constitute and what it's going to look like. And that's what the Meliere. So you're saying that a pump house is an office. It is it's so that. It doesn't have to have anything in it or do anything other than run. I have a pump. So what they said was that the office was any fixed location purposefully selected. To carry on an activity in furtherance of the corporation's business activities. So anything's an office office, a pretty broad. Name. Right. And that's, I think that's what the court was, was getting after your honor is to broaden that term because there are so many different types of businesses that are out there. Any other questions from your honors? The fact that this was a fixed location that was just transporting water. Is there anything else about this? Pump house that would, in your opinion, make it an office. So my client in his affidavit speaks to that somewhat. He indicates that in his affidavit. That this is a facility that houses three river to river forwarding pumps used to deliver water for the storage pond. That feeds the boiler and cooling towers of the Prairie state electrical plant. Also includes an acid injection skid and air compressor and compressor tank. And a designated room for the motor control center, which also houses the breakers for the pumps. And he described that equipment as essential to the electric plant that produces and sells energy. So without it, they wouldn't be able to produce the energy. That's my client's statement. And he's somebody who worked in, in that location for 11 years doing that job. And that was not something that was refuted by defendants. Any of their employees in their affidavits or elsewhere at this point. And that was something that I think the trial court also appropriately noted is, is there was nothing that defendants have provided to refute my client's affidavit. Now they talked about a pond and they were taking water from the pond for cooling. Is there any other water put in that pond? Besides what comes from the phone that I do not know your honor. Admittedly. I will tell you that I, I do not know. I'm limited to, to what my client has kind of taught me about how this, how this business works at this point.  Okay. Thank you. Thank you. Any other questions? Your honors. I would just close by indicating that I think that judge Rudolph's opinion was well-reasoned. His order gave specific basis for his. Determinations with respect to both venue and forum non-convenience. I think it's pretty clear that the defendants intentionally selected this location. For the water pump house. And that they were going there on a regular basis. It's a fixed location that they're purposefully selecting to carry on their activities and furtheration of their corporations, business activities. And that's precisely what the appellate court and Mellie air said that we need to look to, and we need to. Protect in terms of the definition of what constitutes an office and  So I think that the defendants. Are not. Subjecting themselves to. Venue in St. Clair County. I also don't think that they have shown that there is an inconvenience to appearing in St. Clair County. Their witnesses reside there. My client's certainly happy to travel there since he filed the lawsuit there and it lives in Clinton County, which is close. So in conclusion, the totality of the evidence, I believe, supports the trial court's ruling. And I thank you for your time. If you don't have any other questions that that will be all for me. Justice Moore. No questions. Justice Welsh. No more questions. Okay. Thank you, Ms. Rich. Ms. Pesh rubato. Yes. Thank you. May it please the court. So I want to address the other office that.   And this is something that. Several of you had questions about. I agree with Ms. Rich that the fifth district has taken a very broad approach to what an office is, but even under that broad approach, it doesn't get to this particular pump house. First of all,   when she was in the trial, she talked about a fixed location and choosing that location because it was in St. Clair County. The location wasn't chosen because it was in St. Clair County. The location was chosen based on its proximity to the river. The river flows through multiple counties. It could have been. It could have been any body of water. There's nothing unique about. The, the location.   And there's no water coming in, in St. Clair County, the water coming from St. Clair County. In fact, The, the argument that Ms. Rich and the plaintiff have repeatedly made is that this water is essential to the energy production process. But honestly, you could say that about any. Of the resources without the electricity powering the plant. You couldn't run the machinery without the natural gas. You couldn't run the machinery. This would be akin to someone setting up a wind turbine farm in an, in a joining County to create energy to run a facility. And then saying that those wind turbines, because people go out and check on them are now an other office from which that that company does business. The fact that water is used in the production process. It's not a component of electricity water. They're not taking the water and making it into electricity. It's just used as a part of the cooling process. And the Illinois Supreme court has made it very, very clear that even when you're talking about purchasing supplies. From the particular County that there's a threshold that needs to be met. And in this case. We're well below that threshold. No supplies are purchased. We're talking about water. And so, the fact that the water is used as a part of the cooling process. To answer the question that was asked earlier about the water in the holding pond. The water is pumped from the Kaskaskia river, but it's also a repository for natural water from runoff from rain. So a hundred percent of the water that's used at the facility is not. Coming from the Kaskaskia river, the bulk of it is, but not a hundred percent. Going back to the Mellier case though. It's very distinguishable from this case. There you have two pilots who are assigned on a full-time basis. To go to that location. There's a desk. There's a phone. That's where they work out of. That's where they report to. The same cannot be said here. No employee. Here you have people who are assigned every day to go to that pump house and check on it. And if it's not working correctly, they would fix it. You are correct. But I think that the term assigned as used in Mellier versus here. This is a task out of their day. So when you're talking about these maintenance mechanics that work at the energy facility in Washington County. They're assigned to work in Washington County. They may have a task that, that one of the things that they have to do. It's no different than running an errand or anything else in an adjoining County. That's not enough to a fixed venue in St. Claire County because employees may from time to time. Have to go to St. Claire County for an errand or for a task. Well, this is not wait, this is not an errand. This is something that has to be done every day as a part of the. The maintenance of the pump house. And although we've talked a lot about other office, the other criteria is whether they're doing business in St. Claire County. Are you saying that the assignment of these people is not enough to do business in St. Claire County? Absolutely. I am. And the reason for that is there is nothing happening at this pump house, other than pumping water. They're not designing, selling, marketing, soliciting, doing anything. No part of the energy production process occurs in St. Claire County. And I might tend to agree that if there were employees who were permanently assigned to St. Claire County to maintain this pump, that, that you would, there would be more of an argument in favor of a fixing venue, but we're talking about various employees who are just. Assigned on a day, you know, day-to-day to go to the pump house versus in the Meliere case, these pilots, that's where they were assigned. There was signage saying that the, the hangar was, was their office, that that's where they did business out of. And so for that reason, the other office makes sense, but here nothing is happening at the pump house that would constitute doing business or being in other office. Okay. Thank you. Justice Welsh, any questions? No furthermore. Justice Moore? No. Okay. Thank you both for your arguments today. This matter will be taken under advisement and we'll get you an order in due course.